**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

TINA S.,[1]                                                    Case No. 2:25-cv-303

     Plaintiff,                                          Bowman, C.M.J.

v.

COMMISSIONER OF SOCIAL SECURITY,

     Defendant.

**MEMORANDUM OF OPINION AND ORDER**

Plaintiff Tina S. filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled. *See* 42 U.S.C. § 405(g). Proceeding through counsel, Plaintiff presents three claims of error, all of which the Defendant disputes. As explained below, the Administrative Law Judge (ALJ)'s finding of non-disability is AFFIRMED, because it is supported by substantial evidence in the administrative record. The parties have consented to the jurisdiction of the undersigned magistrate judge. *See* 28 U.S.C. §636(c).

**I.  Summary of Administrative Record**

Plaintiff applied for supplemental security income (SSI) under Title XVI of the Social Act in April 2022, alleging disability beginning on January 30, 2009. (Tr. 208-14). The application was denied on both initial consideration (Tr. 113-22) and

---

[1]The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials. *See* General Order 22-01.

reconsideration. (Tr. 124- 33). In December 2023, ALJ Regina Carpenter (the "ALJ") held a hearing on Plaintiff's application; Plaintiff testified in the presence of her counsel. (Tr. 57-92). At the hearing, a vocational expert also testified regarding work available in the national economy. (Tr. 83-91). On November 7, 2022, the ALJ issued a written decision, concluding that Plaintiff was not disabled. (Tr. 14-35).

Plaintiff was born in May 1981 and was 40 years old when she filed her application. She graduated high school and has no past relevant work.  (Tr. 25).

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "degenerative disc disease and degenerative joint disease of the cervical spine; headaches; insomnia; generalized anxiety disorder; major depressive disorder; and panic disorder." (Tr. 13). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1.  Despite these impairments, the ALJ determined that Plaintiff retains the RFC to perform light work subject to the following limitations:

> No crawling or climbing of ladders, ropes or scaffolds and no more than occasional balancing, crouching, kneeling or stooping, as those are defined in the DOT/SCO; no concentrated exposure to extreme cold or heat, to wetness, or to humidity, no exposure to excessive noise, no concentrated exposure to excessive vibrations or atmospheric conditions; no exposure to unprotected heights, hazardous machinery, and commercial driving; can understand, remember and carry out simple instructions; no work that requires a specific production rate pace, such as assembly line work or an hourly production quota; can occasionally deal with changes in a routine work setting; no interaction with the public; and no more than occasional interaction with coworkers and supervisors.

(Tr. 16).

2

Based upon her RFC and testimony from the vocational expert, the ALJ concluded that Plaintiff could perform jobs in the national economy including Marker, Routing Clerk, and Router. (Tr. 26). Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to SSI. *Id.*

The Appeals Council denied Plaintiff's request for review.  Therefore, the ALJ's decision stands as the Defendant's final determination.  On appeal to this Court, Plaintiff argues that the ALJ erred by: (1) failing to find that Plaintiff's headaches medically equaled listing 11.02(B); (2) improperly evaluating the opinion evidence; and (3) improperly evaluating the prior administrative findings. Upon close analysis, I conclude that Plaintiff's assignments of error are not well-taken.

## II.    Analysis

### A.  Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a).  Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

3

*Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted).  In conducting this review, the court should consider the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability.  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).  As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion....  The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts.  If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.*  (citations omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy.  *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); see also *Walters v. Comm'r of Soc. Sec.*, 127 F.3d

525, 528-29 (6th Cir. 1997) (explaining sequential process); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits.  20 C.F.R. § 404.1512(a).  A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job.  42 U.S.C. § 423(d)(1)(A).

**B. The ALJ's Decision is supported by Substantial Evidence**

*1. Listing 11.02(b)*

Plaintiff challenges the ALJ's finding that her migraine headaches do not medically equal Listing 11.02(B).  Specifically, Plaintiff contends that the ALJ improperly based her findings on the fact that Plaintiff had not seen a neurologist since 2022.  Plaintiff's contention is unavailing.

At the third step, a claimant will be found disabled if her impairment meets or medically equals one of the listings in the Listing of Impairments. 20 C.F.R. § 416.920(a)(4)(iii); *Turner v. Comm'r of Soc. Sec.,* 381 F. App'x 488, 491 (6th Cir. 2010). The Listing of Impairments, set forth in Appendix 1 to Subpart P of the regulations, describes impairments the Social Security Administration considers to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. §§ 416.925(a), 404.1525(a). Each listing specifies "the objective medical and other findings needed to satisfy the criteria of that listing." 20 C.F.R. §§ 416.925(c)(3), 404.1525(c)(3).

An ALJ will find that an impairment "meets the requirements of a listing when it satisfies all the criteria of that listing." 20 C.F.R. § 416.925(c)(3) (emphasis original); see *Hale v. Sec'y of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir. 1984). An ALJ will find that an impairment is "medically equivalent to a listed impairment ... if it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926(a).

Medical equivalence can be found in one of three ways:

(1)(i) If [the claimant has] an impairment that is described in the Listing of Impairments in appendix 1 of subpart P of part 404 of this chapter, but —
(A) [the claimant does] not exhibit one or more of the findings specified in the particular listing, or
(B) [the claimant] exhibit[s] all of the findings, but one or more of the findings is not as severe as specified in the particular listing,
(ii) [The Administrative Law Judge] will find that [the claimant's] impairment is medically equivalent to that listing if [the claimant has] other findings related to [the claimant's] impairment that are at least of equal medical significance to the required criteria.
(2) If [the claimant has] an impairment(s) that is not described in the Listing of Impairments in appendix 1 of subpart P of part 404 of this chapter, [the Administrative Law Judge] will compare [the claimant's] findings with those for closely analogous listed impairments. If the findings related to [the claimant's] impairment(s) are at least of equal medical significance to those of a listed impairment, [the Administrative Law Judge] will find that [the claimant's] impairment(s) is medically equivalent to the analogous listing.
(3) If [the claimant has] a combination of impairments, no one of which meets a listing described in the Listing of Impairments in appendix 1 of subpart P of part 404 of this chapter (see § 416.925(c)(3)), [the Administrative Law Judge] will compare [the claimant's] findings with those for closely analogous listed impairments. If the findings related to [the claimant's] impairments are at least of equal medical significance to those of a listed impairment, [the Administrative Law Judge] will find that [the claimant's] combination of impairments is medically equivalent to that listing.

20 C.F.R. §§ 416.926(b), 404.1526(b). Because migraines are closely analogous to a listed impairment, the second method of determining medical equivalence applies here. Social Security Ruling 19-4p provides that epilepsy Listing 11.02 is the most closely

6

analogous listed impairment to migraines. 2019 WL 4169635, at *7 (Aug. 26, 2019)

[hereinafter "SSR 19-4p"]. Additionally, Listing 11.02 provides as follows:

> 11.02 Epilepsy, documented by a detailed description of a typical seizure and characterized by A, B, C, or D:
> A. Generalized tonic-clonic seizures (see 11.00H1a), occurring at least once a month for at least 3 consecutive months (11.00H4) despite adherence to prescribed treatment (11.00C); or.
> B. Dyscognitive seizures (see 11.00H1b), occurring at least once a week for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); or
> C. Generalized tonic-clonic seizures (see 11.00H1a), occurring at least once every 2 months for at least 4 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); and a marked limitation in one of the following:
> 1. Physical functioning (see 11.00G3a); or
> 2. Understanding, remembering, or applying information (see 11.00G3b(i)); or
> 3. Interacting with others (see 11.00G3b(ii)); or
> 4. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or
> 5. Adapting or managing oneself (see 11.00G3b(iv)); or
> D. Dyscognitive seizures (see 11.00H1b), occurring at least once every 2 weeks for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); and a marked limitation in one of the following:
> 1. Physical functioning (see 11.00G3a); or
> 2. Understanding, remembering, or applying information (see 11.00G3b(i)); or
> 3. Interacting with others (see 11.00G3b(ii)); or
> 4. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or
> 5. Adapting or managing oneself (see 11.00G3b(iv)).

20 C.F.R. Pt. 404, Subpt. P, App.1, Listing 11.02. Each subparagraph of Listing

11.02 is a sufficient basis to find medical equivalence. SSR 19-4p, 2019 WL 4169635,

at *7 (Aug. 26, 2019). SSR 19-4p provides that Paragraph B of Listing 11.02 requires

showing "dyscognitive seizures occurring at least once a week for at least 3 consecutive

months despite adherence to prescribed treatment." Id. By contrast, SSR 19-4p provides

that Paragraph D of Listing 11.02 requires showing "dyscognitive seizures occurring at

least once every 2 weeks for at least 3 consecutive months despite adherence to prescribed treatment, and marked limitation in one area of functioning." Id.

Here, at step three, the ALJ cited SSR 19-4p and "considered this condition alone and in combination with her other impairments but found no objective evidence that any Listing is medically equaled" (Tr. 14). In this regard, the ALJ noted that Plaintiff had not seen a neurologist since 2022 and there was no evidence of any treatment for headaches since that time. (Tr. 15; citing Tr. 405-22). The ALJ's decision in this regard is substantially reported.

An ALJ must sufficiently articulate how the record establishes medical equivalency, providing "a rationale for a finding of medical equivalence in a decision that is sufficient for a subsequent reviewer or court to understand." SSR 17-2p, 2017 WL 3928306, at *4 (Mar. 27, 2017). However, the ALJ "is not required to articulate specific evidence supporting" the finding that an impairment does not medically equal a listing if the "record does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment." Id. In such a case, a general statement that the impairment does not medically equal a listing is sufficient articulation. Id. But SSR 17-2p indicates that at step four the ALJ "will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step three." Elizabeth A. v. O'Malley, No. 4:24-CV-00012-HBB, 2024 WL 4296960, at *3–5 (W.D. Ky. Sept. 25, 2024) citing SSR 17-2p, 2017 WL 3928306, at *4. Such is the case here.

At step four in the sequential evaluation, the ALJ considered the evidence relating to Plaintiff's headaches and noted the record contains little treatment. Specifically, the

8

ALJ noted that the record revealed treatment with a neurologist in 2021 and 2022. (Tr. 20). Notably, at her last appointment of record with the neurologist in June 2022, she reported stress and weather changes affected her headaches and a treatment note indicated that Propranolol helped a lot with her headaches. Id. The record showed no further treatment and MRI of the brain in April 2023 showed no acute intracranial process. (Tr. 20)

Based on this evidence of her headaches and insomnia, the ALJ found that Plaintiff is able to perform the range of light work activity prescribed in the residual functional capacity.  In this regard, the ALJ noted that although Plaintiff testified to daily headaches and migraine 3-4 times a week, the objective record does not support that frequency of headaches or severe headaches.  As noted above, in 2022 her neurologist reported medications helped her headaches, she has not had any treatment since 2022, and she has not had any emergency room visits or hospitalizations for headaches. (Tr. 20).

Namely, at an emergency room visit in 2023 for an itchy eye, she did not report any headaches or insomnia, and an examination was normal. Id. (internal citations omitted). The ALJ determined that the record supports her headaches and insomnia are generally controlled with her medications and are accommodated by limiting her to light work with no climbing ladders, ropes, or scaffolds; no concentrated exposure to extreme cold or heat, wetness, or humidity; no exposure to excessive noise; no concentrated exposure to excessive vibrations or atmospheric conditions; no exposure to unprotected heights, hazardous machinery, and commercial driving; understanding, remembering and carrying out simple instructions; and no work that requires a specific production rate

9

pace, which accommodates her headaches, any fatigue caused by insomnia, and her complaints that stress and environmental conditions increase her headaches.

Plaintiff, however, notes that two mental health treatment notes in which Plaintiff reported to her mental health treatment provider in December 2022 and June 2023 that she was seeking Botox treatment for her migraines. (Tr. 552, 661). Such argument fails to establish that her headaches satisfy or equal the listing requirements. As noted by the Commissioner, the undersigned agrees that what Plaintiff is essentially arguing amounts to reweigh the evidence in her favor. *See Napier v. Comm'r of Soc. Sec.*, 127 F.4th 1000, 1007 (6th Cir. 2025) ("We may not reweigh those findings. Rather, as long as the ALJ's findings were, as here, supported by substantial evidence, we may not second-guess them, even if substantial evidence would support the opposite conclusion."); *Dyson v. Comm'r of Soc. Sec.*, 786 F. App'x 586, 588 (6th Cir. 2019) ("[t]his [C]ourt does not weigh evidence, assess credibility, or resolve conflicts in testimony— that's the ALJ's job."); *Whetsel v. Comm'r of Soc. Sec.*, 2017 WL 443499, at *8 (S.D. Ohio Feb. 2, 2017) ("it is not this Court's job to reweigh the evidence, but only to determine if the ALJ has evaluated it in a reasonable fashion.").

As noted above, it is Plaintiff's burden to show that the ALJ's findings are unsupported by substantial evidence. Here, Plaintiff argues only that evidence exists from which the ALJ could have drawn a different conclusion. That is not enough. *See Jones v. Com'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003) ("[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ."). The evidence summarized above easily

constitutes "substantial evidence" to support the ALJ's determination that Plaintiff's subjective complaints were not fully consistent with the record. While Plaintiff may disagree with that assessment, she has failed to demonstrate any factual or legal error. A court may not reverse so long as the ALJ's analysis falls within a "zone of choice," a standard that is met here.

*2. Opinion Evidence.*

Plaintiff's second assignment or error asserts that the ALJ erred in evaluating the opinion of her treatment psychiatrist Prabjot Deol, M.D. Specifically, Plaintiff contends that the ALJ failed to address the supportability and consistency factors in assessing his opinion. Plaintiff's contention is unavailing.

Because Plaintiff applied for benefits on or after March 27, 2017, the ALJ applied the applicable set of regulations for evaluating medical evidence that differs substantially from prior regulations. The current regulations require the ALJ to assess the persuasiveness of medical opinions using a set of factors. 20 C.F.R. § 416.920c. The regulation states that the ALJ "will not defer or give specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 416.920c(a).

The ALJ is only required to explain how he or she considered the supportability and consistency factors, which are the two most important factors in determining the persuasiveness of a medical source's opinion or a prior administrative medical finding. 20 C.F.R. § 416.920c(b)(2). The ALJ may, but is not required to, explain how he or she considered the other remaining factors in paragraphs (c)(3) through (c)(5) when

articulating how he or she considered medical opinions. See 20 C.F.R. §§ 416.920c(b)(2)-(3).

> In practice, this means that the "supportability" factor "concerns an opinion's reference to diagnostic techniques, data collection procedures/analysis, and other objective medical evidence." *Reusel v. Comm'r of Soc. Sec.*, No. 5:20-CV-1291, 2021 WL 1697919, at *7 n.6 (N.D. Ohio Apr. 29, 2021) (citing SSR 96-2p, 1996 SSR LEXIS 9 (July 2, 1996) (explaining supportability and inconsistency); 20 C.F.R. § 404.1527(c)(3), (4) (differentiating "supportability" and "consistency"); 20 C.F.R. § 404.1520c(c)(1), (2) (further clarifying the difference between "supportability" and "consistency" for purposes of the post-March 27, 2017 regulations)).

As to supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) ... the more persuasive the medical opinions ... will be." 20 C.F.R. § 404.1520c(c)(1). In other words, supportability addresses whether a medical professional has sufficient justification for their own conclusions. *See Crystal E.J. v. Comm'r of Soc. Sec.*, No. 2:21-CV-04861, 2022 WL 2680069 (S.D. Ohio July 12, 2022) (Preston Deavers, M.J.).

Here the record indicates that in December 2023, Dr. Deol completed a "Mental Impairment Questionnaire" and checked boxes and wrote short notes indicating that Plaintiff was "seriously limited" in several areas including understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace, and adapting and managing oneself and that she would be unable to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 711-12). Dr. Deol additionally indicated that Plaintiff's anxiety would impair her ability to complete tasks and that she would be absent from work 4-5 days per week due to her impairments.

In formulating Plaintiff's RFC, the ALJ determined that Dr. Deol's opinion was not persuasive.  In so concluding, the ALJ noted that Dr. Deol did not explain what objective findings supported such limitations, and that the opinion was "not supported by his own treatment notes or his mental status evaluation that failed to show significant cognitive or behavioral limitations." (Tr. 24).  See 20 C.F.R. § 416.920c(c)(1) (supportability). The ALJ also determined that Dr. Deol's opinion was not consistent with any other evidence in the record, including her counseling session notes, her neurologist treatment notes and examinations and her activities of daily living. (Tr. 25). See 20 C.F.R. § 416.920c(c)(2) (consistency).

Specifically, the ALJ considered additional treatment notes from Dr. Deol and highlighted that in 2023, mental status examinations generally revealed anxious/depressed mood but also "cooperative behavior, normal speech, logical thought processes and associations, unremarkable stream of thought" and "fair fund of knowledge, memory, insight, judgment, and concentration" (Tr.  22, citing Tr. 624-28, 641-50*). See Chicora v. Comm'r of Soc. Sec.*, 852 F. App'x 968, 970 (6th Cir. 2021) ("The ALJ's explanation goes directly to the supportability and consistency factors. The ALJ cited specific statements in Dr. Castillo's own treatment notes and examination findings that fail to support her opinion . . .")

Moreover, as noted by the Commissioner, in finding that Dr. Deol's was inconsistent with the record evidence, including her counseling session notes, her neurologist treatment notes and examinations, and her activities of daily living.  (Tr.  24-25). In this regard, the ALJ considered Plaintiff's counseling notes earlier in the decision and noted that at her initial appointment in April 2022, she had a depressed mood, flat

13

affect, and poor concentration, but appropriate thought content, good eye contact, normal speech, and intact memory. (Tr. 22, citing Tr.344). The ALJ also discussed Plaintiff's activities of daily living and considered that Plaintiff reported that she was able to drive a car, shop in stores occasionally, watch television, go to the gas station occasionally, and spend time with her grandchildren.  (Tr. 23, Tr. 67-79, 238-46). See *Berry v. Comm'r of Soc. Sec.*, 289 F. App'x 54, 56 (6th Cir. 2008) ("Berry's ability to live independently and perform regular household activities belies her claim that she is totally disabled."); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004) ("The administrative law judge justifiably considered Warner's ability to conduct daily life activities in the face of his claim of disabling pain.").

For these reasons, the undersigned finds that the ALJ properly evaluated Dr. Deol's opinion in accordance with Agency regulations and controlling law

*3. ALJ's evaluation of the prior Administrative Findings*

Plaintiff argues last that the ALJ erred in applying the wrong standard in considering the prior 2020 ALJ decision.  Notably, in March 2020, an ALJ issued a decision finding that Plaintiff was capable of sedentary work and therefore not disabled (R. at 93-111).  Plaintiff notes that the ALJ stated that she fully considered the ALJ's prior decision yet found that the current medical evidence of record does not support the finding that Plaintiff continued to have the same impairments and resulting limitations. (Tr. 13).  Citing AR ruling 21-1(6) and *Earley v. Commissioner of Social Security*, 893 F.3d 929 (6th Cir. 2018), Plaintiff argues that the ALJ erroneously failed to consider the prior ALJ's findings when making her ultimate decision in this matter.   Plaintiff's contention is not well-taken.

14

In *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997), honoring principles of res judicata, the Sixth Circuit found that "[j]ust as a social security claimant is barred from relitigating an issue that has been previously determined, so is the Commissioner." Id. at 842. Thus, "[w]hen the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances." Id. *Drummond* mandated that absent evidence that a claimant's condition has improved, findings issued by an ALJ as part of a prior disability determination are binding on an ALJ in a subsequent proceeding. Id.

Thereafter, the Sixth Circuit clarified the scope of *Drummond'*s reach in *Earley*, noting that res judicata only applies to a claim if an applicant files a new application for the same period of disability that the Commissioner rejected in a prior decision. 893 F.3d at 933. The Court further explained that Drummond did not intend for res judicata to foreclose the possibility of a claimant seeking review of a new application for a new period of disability. See id. Instead, where disability is alleged for a subsequent period, an ALJ must give the new application a "fresh look" where it "contain[s] new evidence or satisf[ies] a new regulatory threshold ... while being mindful of past rulings and the record in prior proceedings." Id. at 931. In undertaking this task, "it is fair for an [ALJ] to take the view that, absent new and additional evidence, the first [ALJ's] findings are a legitimate, albeit not binding, consideration in reviewing a second application." Id. at 933 (noting that an "[ALJ] honors th[e] principles [of res judicata] by considering what an earlier judge found with respect to a later application and by considering that earlier record"). This does not mean that an ALJ reviewing a second application must presume that a prior disability decision will prevail in the subsequent application. Rather, it is the responsibility

15

of the ALJ reviewing the claim for the later unadjudicated period to determine how much weight to accord both the prior decision and any newly submitted evidence; this includes the effect of a new regulatory threshold, if applicable.  *See Dennis D. v. Comm'r of Soc. Sec.*, No. 23-3667, 2024 WL 1193662, at *3–4 (6th Cir. Mar. 20, 2024)

Here, the ALJ cited to *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997), and the related Acquiescence Ruling relating to the prior decision. Thus, as noted above, Plaintiff contends that the ALJ applied an improper legal standard when evaluating the prior decision.  However, as noted by the Commissioner, the Sixth Circuit has recognized that an ALJ's citation to *Drummond,* rather than the standard more recently described in *Earley*, does not warrant remand as long as the substance of the ALJ's decision shows that the ALJ gave the new claim a fresh look consistent with *Earley.* See *Dennis D. v. Commissioner of Social Security*, No. 23-3667, 2024 WL 1193662, at *4 (6th Cir. Mar. 20, 2024).  Such is the case here.

Upon careful review, the undersigned finds that the ALJ properly considered the prior decision.  Namely, at step two, the ALJ noted that she considered the prior Administrative Law Judge decision of March 10, 2020 but did not adopt the severe impairment finding from that decision in the current decision. (Tr. 13).  In this regard, the ALJ noted that he did not adopt the severe impairments due to new and material evidence that supports different severe impairments.  Next, in her evaluation of Plaintiff's RFC, the ALJ again noted that she considered the prior ALJ's RFC determination but did not find it persuasive.  Notably, the ALJ determined that the current record includes new and material evidence of significant improvement in the claimant's prior severe physical impairments in which the prior Administrative Law Judge relied on in forming

16

his residual functional capacity.  Specifically, the ALJ found that the limitation to a range of sedentary work is not consistent with the consultative examination findings; the very limited or lack of any treatment for her prior severe impairments; her limited treatment for her cervical impairment, insomnia, and headaches; and examinations with her neurologist that were normal. (Tr. 17).

In light of the foregoing, the undesigned finds that the ALJ's decision is consistent with *Earley*. Namely, the ALJ gave a "fresh look" to the new evidence while being "mindful" of prior ALJ decisions, and she based the RFC on the record as a whole. It is well established that the findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). The ALJ's decision is within that zone of choice and is therefore substantially supported.

### III. Conclusion

For the reasons explained herein, **IT IS ORDERED THAT** Defendant's decision is **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and is **AFFIRMED. IT IS FURTHER ORDERED THAT** that this case is **CLOSED**.

*s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Chief Magistrate Judge

17